**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| GENAVIEVE COLLINS-HUXTABLE,<br>Plaintiff,<br><br>v.<br><br>HASBRO, INC.,<br>Defendant. | C.A. No. 1:24-cv-00159-MSM-PAS |

**MEMORANDUM AND ORDER**

Mary S. McElroy, United States District Judge.

Before the Court is the Motion for Summary Judgment (ECF No. 15) of the defendant, Hasbro, Inc. ("Hasbro"), a multinational toy, game, and entertainment company. The plaintiff, Genavieve Collins-Huxtable, asserts discrimination, retaliation, failure to accommodate, unpaid wages, and WARN Act claims against Hasbro stemming from its termination of her employment in 2022. (ECF No. 1.) Hasbro argues that it terminated Ms. Collins-Huxtable as part of a nondiscriminatory reduction in force ("RIF"), and that dismissal of all her claims is warranted. (ECF No. 16.) For the following reasons, the Court GRANTS Hasbro's Motion with respect to Ms. Collins-Huxtable's age discrimination, failure to accommodate, and WARN Act claims but DENIES it with respect to her disability discrimination, retaliation, and unpaid wages claims.

## I. BACKGROUND

Hasbro hired Ms. Collins-Huxtable in January 2018. She began as a temporary employee before being converted to a full-time position and worked as a "Model Artist" in the "Model Shop" of Hasbro's Pawtucket, Rhode Island office (the "Pawtucket Office"). In this position, her responsibilities included painting sculpted "gray models" of designed products, though she purports to have also been increasingly involved in Hasbro's ongoing "Digital Initiative" in which it began shifting from physical models to digital ones. *See* ECF No. 23-1 at 6, 12. She received positive performance reviews throughout her employment with Hasbro.[1]

Ms. Collins-Huxtable suffered a stroke on September 12, 2021. Hasbro initially provided her with a leave of absence, under the Family and Medical Leave Act ("FMLA") and the Rhode Island Parental and Family Leave Act ("PFML"), from September 13, 2021, to December 13, 2021. Hasbro later extended Ms. Collins-Huxtable's leave at her request.

The parties dispute whether Ms. Collins-Huxtable returned to work for about ten days in April 2022. According to her, she informed her supervisors of her intent to return part-time, per her doctor's recommendation, visited the office once, and then resumed working remotely until she was told by Hasbro that it could not

[1] While apparently acknowledging that Ms. Collins-Huxtable's performance reviews were all positive, *see* ECF No. 28 at 4–5, Hasbro suggest that she may still have had some performance issues that supported her eventual termination. *See* ECF No. 26 at 9–10. But the evidence supporting this suggestion appears to consist solely of a handful of emails indicating some friction between Ms. Collins-Huxtable and one of her coworkers over a year before the date of her termination. *See* ECF No. 27-1.

accommodate her requested part-time schedule and instead extended her medical leave. (ECF No. 23-1 at 14, 17.) Hasbro denies that she returned to work, noting that her supervisor testified that he was unaware of her having returned to part-time work in April 2022. (ECF No. 26 at 11–12.) Records from the Hasbro's "Access Card Tracking System" indicate that Ms. Collins-Huxtable did not visit the Pawtucket Office in either April or May 2022. (ECF No. 20 ¶ 7.) The parties agree Hasbro eventually told her that she could not officially return to work until certain paperwork was completed, and that she only completed that paperwork in May 2022, at which point Hasbro officially denied her requested part-time work accommodation and extended her leave. (ECF No. 17 ¶¶ 28-40.)

Ms. Collins-Huxtable remained on leave until September 6, 2022, when she returned to working full-time. However, on October 6, 2022, Hasbro informed her that her job was being eliminated as part of a RIF, effective the next day. She was 37 years old at the time Hasbo terminated her employment. She was one of 18 employees at Hasbro's Pawtucket office whose positions were terminated (out of the 709 who worked in that office), 4 of whom (including herself) worked in the Model Shop (which had 38 employees).

Prior to suing, Ms. Collins-Huxtable submitted an administrative claim against Hasbro to the Rhode Island Commission for Human Rights ("RICHR"). *See* ECF No. 23-17. In its Position Statement on that claim, which provided that it was "based on the facts as [Hasbro] currently understands them," Hasbro alleged that problems with Ms. Collins-Huxtable's performance contributed to its decision to

terminate her position during the reduction-in-force. *Id.* at 3–5. According to that Position Statement, she had received an unfavorable rating on a "9 Box Talent Grid" (the "Negative Grid Rating") used by Hasbro to identify positions that were to be eliminated during the reduction-in-force, and her role "was eliminated based solely upon her skill set and performance." *Id.* at 5. A copy of the Negative Grid Rating has not been produced, however, and her supervisors apparently do not recall ever having rated her negatively on that grid. *See* ECF No. 27-1 at 2. If it existed, the Negative Grid Rating would have been based on the year before, eleven months of which Ms. Collins-Huxtable was on medical leave. *See* ECF No. 23-17 at 5.

## II. STANDARD OF REVIEW

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug Inc.*, 895 F.2d 46, 50 (1st Cir. 1990) (quoting Adv. Comm. Notes to Fed. R. Civ. P. 56). Summary judgment can be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000) (quoting *Sanchez v. Alvarado*, 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the Court must examine the record evidence in the light most favorable to the nonmoving party and draw all permissible inferences in their favor *Feliciano de la Cruz v. El Conquistador Resort & Country Club,* 218 F.3d 1, 5 (1st Cir. 2000) (citing *Mulero–Rodriguez v. Ponte, Inc.,* 98 F.3d 670, 672 (1st Cir. 1996)). The Court may not choose between plausible but conflicting inferences based on the evidence at the summary judgment stage. *Coyne v. Taber Partners I,* 53 F.3d 454, 460 (1st Cir. 1995). Even if the evidence appears to favor one party or the other, so long as reasonable people might draw different conclusions from it, summary judgment will be improper. *Gannon v. Narragansett Elec. Co.,* 777 F. Supp. 167, 169 (D.R.I. 1991).

"[I]n employment discrimination cases 'where elusive concepts such as motive or intent are at issue,' this standard compels summary judgment if the non-moving party 'rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.'" *Feliciano de la Cruz v. El Conquistador Resort and Country Club*, 218 F.3d 1, 5 (1st Cir. 2000) (quoting *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990)). But a court cannot weigh the credibility of witnesses when reviewing a summary judgment motion. *Santiago-Ramos*, 217 F.3d at 55. Ultimately, the judge's role at the summary judgment stage is not to weigh the evidence or uncover the truth, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III. DISCUSSION

Ms. Collins-Huxtable's Complaint asserts eight "Claims for Relief" against Hasbro, falling into three categories. (ECF No. 1 ¶¶ 47–56.) The first, Claims I, through IV alleges that Hasbo discriminated against her based on age and disability, retaliated against her for taking protected medical leave, and failed to reasonably accommodate her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; the Rhode Island Fair Employment Practices Act ("FEPA"), R.I. Gen. Laws § 28-5-1 *et seq.*; the Rhode Island Civil Rights Act ("RICRA"), R.I. Gen. Laws § 42-112-1 *et seq.*; the Rhode Island Parental and Family and Medical Leave Act ("PFML"), R.I. Gen. Laws § 28-48-2; and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2614 *et seq.*,. *Id.* ¶¶ 47–52. The second, Claim V, alleges that Hasbro violated the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101 *et seq.*, by failing to give adequate notice to her before conducting a mass layoff. *Id.* ¶ 53. The third category, Claims VI through VIII, alleges that Hasbro failed to pay her for part-time work performed in April 2022, in violation of the Rhode Island Minimum Wage Statute, R.I. Gen. Laws § 28-12-3, the Rhode Island Payment of Wages Act, R.I. Gen. Laws § 28-14-2 *et seq.*, and the Federal Labor Standard Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*

Hasbro moves for summary judgment against all Ms. Collins-Huxtable's Claims, arguing that they all fail either as a matter of law or because she has produced insufficient evidence to support them. (ECF No. 16.) Ms. Collins-Huxtable acknowledges that her age-based discrimination and retaliation claims are meritless,

*see* ECF No. 22 at 7 n.1, but argues that disputes of material fact otherwise preclude summary judgment against her.

### A. A Reasonable Jury Could Find Hasbro Discriminated or Retaliated Against Ms. Collins-Huxtable

It is "routine practice" for courts to analyze discrimination claims under federal law together with claims under RICRA and FEPA. *Ferro v. Rhode Island Dept. of Transp. ex rel. Lewis*, 2 F. Supp. 3d 150, 157 (D.R.I. 2014); *see also Ferreira v. Child and Fam. Services*, 222 A.3d 69, 77 (R.I. 2019) ("This Court has also previously adopted the legal framework employed by the federal courts when considering these claims."). When there is a lack of direct evidence of discrimination, the burden-shifting framework outlined in *McDonnell Douglas* applies. *Ripoli v. R.I. Dep't of Hum. Servs.*, 123 F.4th 565, 571–72 (1st Cir. 2024) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)). Under that framework, the plaintiff must first make a prima facie case of discrimination by showing (1) the plaintiff was a member of a protected class; (2) the plaintiff was qualified for the job; (3) the plaintiff suffered an adverse employment action, and (4) the adverse employment action transpired under circumstances giving rise to an inference of discrimination. *Id.* (citing *Rinsky v. Cushman & Wakefield, Inc.*, 918 F.3d 8, 29 (1st Cir. 2019)).

Once the plaintiff has established a prima facie case, the burden shifts to the defendant, who must provide evidence supporting a legitimate non-discriminatory reason for the adverse employment action. *Id.* at 572. If the defendant provides that evidence, the burden shifts back to the plaintiff, who must produce evidence that the

defendant's articulated reason for the adverse employment action was pretextual. *Id.* at 574.

The plaintiff's prima facie burden is light. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The plaintiff only needs to show some evidence that, if uncontradicted, could support a legal conclusion that the plaintiff was discriminated against. *Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 719 (1st Cir. 1994). While various courts have outlined circumstances that may support an inference of discrimination, this inquiry is ultimately "flexible and situation-specific." *Id.*

As for establishing pretext, the First Circuit has explained that there is no "mechanical formula." *Alston v. Town of Brookline*, 997 F.3d 23, 45 (1st Cir. 2021). Whether a defendant's articulated reason is pretextual is highly fact-specific. *Id.* As such, this question is typically one for a jury to resolve. *Che v. Massachusetts Bay Transp. Auth.*, 342 F.3d 31, 40 (1st Cir. 2003).

Retaliation claims follow a similar burden-shifting framework to discrimination claims. To prevail on a retaliation claim, the plaintiff must prove that they (1) engaged in "protected conduct" under state or federal law; (2) that they suffered an adverse employment action; and (3) that "a causal connection existed between the protected conduct and the adverse action." *Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33, 42 (1st Cir. 2011) (quoting *McMillan v. Mass. Soc'y for the Prevention of Cruelty to Animals*, 140 F.3d 288, 309 (1st Cir. 1998)). Once the plaintiff makes that prima facie showing, the burden shifts to the defendant to

provide evidence of a legitimate, non-retaliatory reason for its actions. *McMillan*, 140 F.3d at 309. If the defendant does so, the burden then shifts back to the plaintiff to provide evidence that the reason articulated by the defendant was pretextual. *Id.*

Here, Hasbro does not deny that the first three elements of the *McDonnell Douglas* test and the first two elements of a retaliation claim have been satisfied: Ms. Collins-Huxtable's medical disability and her medical leave were protected by federal law, she was qualified for her position, and she suffered an adverse employment action when she was terminated. *See* ECF No. 16 at 14–17. Instead, Hasbro argues that she has not sufficiently established a causal connection between her termination and her medical disability or her medical leave, and that she has not sufficiently challenged its proffered nondiscriminatory reason (the reduction in force) for her termination. *See id.*

In response, Ms. Collins-Huxtable chiefly relies on the short time between her return from medical leave and her termination, evidence in the record to support the conclusion that other employees continued to perform her work responsibilities after her termination, and the discrepancy between Hasbro's statement to the RICHR and its current position about the decision to terminate her employment. (ECF No. 22 at 13–14.)[2] She describes the last of these as applying "most critically" in favor of an

[2] Ms. Collins-Huxtable also alleges a third rationale given by Hasbro initially: that "the layoff [she] was a part of was affecting only people with significant performance issues." (ECF No. 23-2 ¶ 16.) This rationale would seem to contradict Hasbro's position that layoff decisions encompassed more holistic evaluations. But Ms. Collins-Huxtable's allegation appears unsubstantiated by any evidence in the record and is instead based "[u]pon information and belief." Her mere allegation does not constitute factual evidence to be considered by the Court at summary judgment.

inference of discriminatory and retaliatory animus, because Hasbro's use of the Negative Grid Rating could suggest that she was effectively being punished for her protected leave, given that it would have been based on the eleven months on which she was on medical leave and the single month after she had returned from leave. *Id.*

The evidence cited by Ms. Collins-Huxtable is enough to satisfy the prima facie burden of her discrimination and retaliation claims. *See Soto-Feliciano v. Villa Cofresi Hotels, Inc.*, 779 F.3d 19, 24 (1st Cir. 2015) (finding the prima facie burden satisfied where the employee cited evidence that the employer had a continued need for the employee's duties to be performed); *DeCaire v. Mukasey,* 530 F.3d 1, 19 (1st Cir. 2008). As Hasbro has cited a non-discriminatory reason for terminating Ms. Collins-Huxtable's employment—the reduction in force—the core question here is whether she has produced sufficient evidence for a reasonable jury to find Hasbro's cited reason to be pretextual.

The Court finds that she has. When a company gives changing and conflicting explanations for an adverse employment action, a jury may conclude that the stated reasons are pretextual. *See Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir. 2000). Although Hasbro disputes the extent to which the explanation it offered in its Position Statement is inconsistent with the explanation it gives now, *see* ECF No. 26 at 10–11, the Position Statement cited the grid rating of Ms. Collins-Huxtable's performance as a justification for the decision to include her in its layoffs. Evidence of that grid rating itself, together with the close temporal proximity between her medical leave and its decision to terminate her employment, would likely be

sufficient to support an inference of discrimination because a jury could conclude that her leave contributed to a negative evaluation of her. And that the review was later used as part of the decision to terminate her employment. Further, a reasonable jury could conclude that Hasbro's present disavowal of the grid rating is enough to give rise to an inference of pretext.

Under the standard of review that applies at summary judgment—in which the evidence must be viewed in the light most favorable to Ms. Collins-Huxtable, with all reasonable inferences drawn in her favor—and given the First Circuit's admonition that courts must be "particularly cautious" about taking such questions out of the hands of juries, *see Che v. Massachusetts Bay Transportation Auth.*, 342 F.3d at 40, there is enough evidence to withstand summary judgment.

**B. Insufficient Evidence Supports Ms. Collins-Huxtable's Failure to Accommodate Claims**

Under the ADA, an employer unlawfully discriminates against an employee by "not making reasonable accommodations to the known physical or mental limitation of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). Reasonable accommodation may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position . . . and other similar accommodations for individuals with disabilities." *Id.* § 12111(9)(B).

Whether the requested accommodation was reasonable is a fact-specific question. *Calero-Cerezo v. U.S. Dept. of J.*, 355 F.3d 6, 23 (1st Cir. 2004). The plaintiff bears the burden of proving that a proposed accommodation was reasonable by showing that it (1) would allow the plaintiff to perform "the essential functions" the job; and (2) that the requested accommodation "is feasible for the employer under the circumstances." *Id.* (quoting *Reed v. LePage Bakeries, Inc.,* 244 F.3d 254, 259 (1st Cir.2001)). The defendant may attempt to rebut the plaintiff's claim by showing some evidence that the proposed accommodation was not feasible and would cause undue hardship. *Id.*

An employer may offer a reasonable alternative accommodation. *Kriegel v. State of Rhode Island, Dep't of Corr.*, 266 F. Supp. 2d 288, 299 n.9 (D.R.I. 2003). A plaintiff cannot prevail on an ADA reasonable accommodation claim if they rejected a reasonable alternative accommodation offered by the employer. *Equal Empl. Opportunity Comm'n v. Citizens Bank, N.A.*, No. CV 19-362WES, 2023 WL 2456642, at *7 (D.R.I. Mar. 10, 2023); *accord Kriegel*, 266 F. Supp. 2d at 299 n.9.

Ms. Collins-Huxtable alleges that Hasbro failed to reasonably accommodate her by refusing to allow her to return to work part-time around April 2022. (ECF No. 22 at 20–21.) But in response to that request, Hasbro told her that permitting her part-time schedule would not be feasible given her work because (1) she was restricted from screen time on her computer; and (2) it would be unmanageable for her to pass off detailed projects halfway through working on them, as would be

required by a part-time schedule. (ECF No. 18-2 at 17–18.) Hasbro instead extended her medical leave until she was cleared to work full-time. *Id.* at 20.

A leave of absence or a leave extension can constitute a reasonable accommodation under the ADA. *Echevarria v. AstraZeneca Pharm. LP*, 856 F.3d 119, 128 (1st Cir. 2017). Whether the leave request is reasonable depends on the facts of the case. *García-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 647 (1st Cir. 2000)). Here, Ms. Collins-Huxtable does not appear to argue that Hasbro's extension of her medical leave was unreasonable. *See* ECF No. 22 at 20–21 (instead focusing on whether Hasbro performed an adequate "hardship analysis").

Given Hasbro's explanations for why Ms. Collins-Huxtable's requested part-time schedule would cause undue hardship, together with her failure to explain why its alternative accommodation—extending her medical leave—was unreasonable, her failure to accommodate claims are insufficient to survive summary judgment. *See Echevarria*, 856 F.3d at 128 (explaining that "the fact-intensive nature of the reasonable-accommodation inquiry does not insulate disability-discrimination cases from summary judgment").

**C. Hasbro's Layoffs at the Pawtucket Office Did Not Violate the WARN Act**

Under the WARN Act, an employer is required to give advance notice before ordering a "mass layoff." 29 U.S.C. § 2102(a). The WARN Act defines a mass layoff as including a reduction in force that results in an employment loss at a "single site of employment during any 30-day period" of either (1) at least 50 employees, if they

constitute at least 33 percent of the total employees at that site; or (2) at least 500 employees. *Id.* § 2101.

The reduction of force in which Hasbro terminated Ms. Collins-Huxtable's employment did not alone meet the definition of a mass layoff under the WARN Act. Instead, she argues that, under 29 U.S.C. § 2102(d), the layoffs conducted at the Pawtucket Office must be viewed together with those conducted globally within a 90-day period. *See* ECF No. 22 at 24–26. But that subsection provides that aggregation may apply to "employment losses for 2 or more groups *at a single site of employment*." 29 U.S.C. § 2102(d).

Ms. Collins-Huxtable points to no evidence in the record suggesting that Hasbro conducted enough layoffs in the Pawtucket Office, as a single site of employment, within a 90-day period to trigger the WARN Act's notice requirements with respect to herself. Her WARN Act claim therefore necessarily fails.

**D. Disputes of Material Fact Preclude Summary Judgment on Ms. Collins-Huxtable's Unpaid Wages Claims.**

The FLSA, Rhode Island Minimum Wage Statute, and RIPWA all require that employers compensate employees for work they perform. *See* 29 U.S.C. § 201 *et seq.*; R.I. Gen. Laws § 28-12-3; R.I. Gen. Laws § 28-12-3. Rhode Island courts "have consistently looked to federal law for guidance in the field of labor law. *DiGuilio v. Rhode Island Broth. of Corr. Officers*, 819 A.2d 1271, 1272 (R.I. 2003). An employee who sues for unpaid wages "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *see Sebren v. Harrison*, 552 F. Supp. 3d 249, 259 (D.R.I. 2021)

(applying *Anderson* to claims brought under both the Fair Labor Standards Act and RIPWA).

When an employer's records are inadequate to resolve an employee's claims, *Anderson* provides a burden-shifting framework. *See Anderson*, 328 U.S. at 687–88. Under that framework, an employee bears the initial burden of proving, through direct or inferential evidence, that she performed work for which she was not properly compensated. *Sebren*, 552 F. Supp. 3d at 260 (citing *Anderson*, 328 U.S. at 687–88). This is a "minimal" burden. *Sec. of Lab. v. DeSisto*, 929 F.2d 789, 792 (1st Cir. 1991). The burden then shifts to the employer to provide evidence that disproves or contradicts the employee's claim. *Anderson*, 328 U.S. at 687–88. If the parties present competing evidence that requires a credibility assessment, summary judgment against an unpaid wages claim should be denied. *See Sebren*, 552 F. Supp. 3d at 260.

Here, Hasbro argues that the "Access Card Tracking System" data contradicts Ms. Collins-Huxtable's claim that she visited the Pawtucket Office in April 2022, and one of her immediate supervisors testified that he did not remember her working at the time. (ECF No. 18-3 at 16–17.) In response, Ms. Collins-Huxtable cites (1) her own affidavit and deposition testimony, in which she claimed to have worked part-time during April 2022; (2) email communications with her supervisors in March 2022 that show she was trying to return to work; and (3) a Human Resources Information System ("HRIS") record that identified March 28 as her formal return-

to-work date. *See* ECF Nos. 23-1 at 13–17 (deposition testimony); 23-2 ¶¶ 7–9 (affidavit); 23-12 (emails); 23-13 at 2 (HRIS record).

Hasbro counters that the Court should not credit Ms. Collins-Huxtable's self-serving deposition testimony or her affidavit because they contain "mere allegations," that are not enough to defeat summary judgment. (ECF No. 26 at 11–12.) It is true that, "to the extent that affidavits submitted in opposition to a motion for summary judgment merely reiterate allegations made in the complaint, *without providing specific factual information made on the basis of personal knowledge*, they are insufficient." *Garmon v. Nat'l R.R. Passenger Corp.*, 844 F.3d 307, 315 (1st Cir. 2016). But here, the relevant portions of Ms. Collins-Huxtable's deposition and affidavit contain her own sworn testimony, based on her personal knowledge, that she worked during the contested period of time. This is evidence that must be considered at summary judgment.

Although Hasbro's records suggest that Ms. Collins-Huxtable did not visit the Pawtucket Office during the relevant period, this alone is inadequate to dispel her unpaid wages claims because she alleges that she worked remotely during that time. *See* ECF No. 23-2 ¶ 8. As such, the burden-shifting *Anderson* framework applies to her claims. Under that framework, her sworn testimony is sufficient to preclude summary judgment against her unpaid wages claims. *See Sebren*, 552 F. Supp. 3d at 260; *Wongbay v. Balise Toyota of Warwick*, No. 22-CV-00458-MSM-AEM, 2025 WL 3071592, at *8 (D.R.I. Nov. 4, 2025) (applying *Anderson* to deny summary judgment

against an employee's RIPWA claim where the employer's records were inadequate and where the employee swore she was owed unpaid commission payments).

## IV. CONCLUSION

For these reasons, the Court GRANTS Hasbro's Motion for Summary Judgment (ECF No. 15) with respect to Collins-Huxtable's age discrimination, failure to accommodate, and WARN Act claims under Claims I through V but DENIES it with respect to her disability discrimination, retaliation, and unpaid wages claims under Claims I through IV and VI through VIII.

IT IS SO ORDERED.

Mary S. McElroy
United States District Judge

September 18, 2026